**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
CEMIL GURKAN GUZELGURGENLI,
HASAN KASIKCI, and BILAL HABES
KASIKCI, Individually and on behalf of all other
Similarly Situated Employees,

       Plaintiffs,

    -against-


PRIME TIME SPECIALS INC. d/b/a,
CENTERREACH DOMINO'S,
CHRISTOPHER HANLEY, and JOHN DOES
#1-10, Jointly and Severally,

       Defendants.
---------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-CV-4549 (ADS)(WDW)

## APPEARANCES:

**Pelton & Associates PC**
*Attorneys for the plaintiffs*
111 Broadway, Suite 901
New York, NY 10006
  By: Brent E. Pelton, Esq., Of Counsel

**Miranda, Sambursky, Slone, Sklarin, Verveniotis LLP**
*Attorneys for the defendants*
240 Mineola Blvd.
Mineola, NY 11501
  By: Michael A. Miranda, Esq.
    Gerald C. Waters, Jr., Esq., Of Counsel

**SPATT, District Judge**.

   Plaintiffs Cemil Gurkan Guzelgurgenli ("Guzelgurgenli"), Hasan Kasikci ("H. Kasikci"),

and Bilal Habes Kasikci ("B. Kasikci", collectively "the Plaintiffs"), filed a putative collective

action suit against various defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, et

seq. ("FLSA") and the New York State Labor Law ("N.Y. Labor Law"), to recover unpaid

overtime compensation, as well as claims under the N.Y. Labor law for spread of-hours

compensation.  The Plaintiffs now move for conditional certification of the class for the collective action and to facilitate notice under 29 U.S.C. §216(b).  For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

The Plaintiffs are employees who worked for Defendants Prime Time Specials Inc., d/b/a Centereach Domino's ("Prime Time"), Christopher Hanley ("Hanley"), and John Does #1–10 ("the John Does" and together with Prime Time and Hanley, "the Defendants").  The Plaintiffs' responsibilities included cashier, kitchen, cleaning, delivery and other general pizza restaurant services.  (Compl., ¶ 40.)

In the complaint, the Plaintiffs allege that Prime Time is an enterprise consisting of seven pizza stores within Long Island, New York, with "each individual store location under common direction, management and control".  (Compl., ¶ 10.)  The Plaintiffs do not identify these seven locations in the complaint.  However, in declarations submitted in support of the instant motion, the Plaintiffs identify eight locations they allege are owned and operated by the Defendants: 2430 Middle Neck Country Road, Centereach, NY 11720 ("Centereach"); 967 Main Street, Suite 10, Holbrook, NY 11741 ("Holbrook"); 5640 Sunrise Highway, Suite 30, Sayville, NY 11782 ("Sayville"); 1079 N. Country Road, Stony Brook, NY 11790 ("Stony Brook"); 179 Medford Ave., Patchogue, NY 11772 ("Patchogue"); 229 Route 112, Unit 1, Coram, NY 11727 ("Coram"); 863 W. Jericho Turnpike, Smithtown, NY 11787 ("Smithtown"); and 725 Route 25A, Miller Place, NY 11764 ("Miller Place").  (Guzelgurgenli Decl., ¶ 13; H. Kasikci Decl., ¶ 12; B. Kasikci Decl., ¶ 9.)

The Plaintiffs allege that Hanley and the John Does are "the majority shareholders and officers, directors and/or managing agents of Prime Time, along with any other corporate entities

owning pizza stores within the "Centereach Dominos" enterprise, who participated in the day-to-day operations of [Prime Time]". (Compl., ¶ 11.) Defendant Christopher Hanley admits that he is "the majority shareholder and officer, director and/or managing agent of Prime Time" (Answer, ¶ 11), and that he owns and operates through Prime Time the following six pizza franchise locations: Holbrook, Coram, Sayville, Patchogue, Stony Brook and Centereach. (Hanley Aff., ¶ 7.)

On September 18, 2011, the Plaintiffs commenced this present suit as a putative collection action against the Defendants. In their Complaint, the Plaintiffs allege that, during the period of their employment, they were subject to a policy and practice requiring them to work in excess of forty hours per week without adequate compensation under the federal overtime pay laws. The Plaintiffs allege that other laborers working for the Defendants who performed similar job responsibilities at all of the Defendants' locations were also deprived of lawful pay.

On or about January 30, 2012, the Plaintiffs filed the current motion, requesting that the Court: (1) conditionally certify this action as a collective action for purposes of notice and discovery pursuant to § 216(b) of the FLSA; (2) authorize the Plaintiffs' counsel to mail the notice of pendency to all putative plaintiffs and to post a copy of the notice of pendency at all of the Defendants' alleged locations, (3) approve the form and content of the Plaintiffs' proposed notice of pendency and reminder notice, (4) order the Defendants to produce to the Plaintiffs' counsel the contact information for each putative plaintiff who was employed by the Defendants from on or after September 19, 2008 to the present, and (5) authorize a 90–day notice period for putative plaintiffs to join this action.

The Defendants oppose the conditional certification and argue that if conditional certification is granted, it should be limited to delivery drivers at the Centereach location. In

addition, if conditional certification is granted, the Defendants contend that: (1) it should only be granted as to persons employed by the Defendants in the last two years; (2) the opt-in period should be 60-days; and (3) the Court should not permit the Plaintiffs to send a reminder notice. Although the Plaintiffs address the arguments regarding the scope of conditional certification in their reply, they do not address the applicable opt-in period, or the request for a reminder notice.

## II.  DISCUSSION

### A. Legal Standard

28 U.S.C. § 216(b) provides that parties suing for relief under 28 U.S.C. §§ 206, 207, and 215(a)(3) may proceed "for and in behalf of himself or themselves and other employees similarly situated."  A proceeding under this provision is traditionally termed a "collective action."  Here, the Plaintiffs seek relief under Section 207 of the FLSA, which governs overtime compensation. Thus, the collective action provision of Section 216(b) is applicable.

A collective action under Section 216 is distinguishable in several ways from the more common class action under Fed. R. Civ. P. 23.  First, a collective action requires class members to opt into the case, rather than opt out.  See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007).  In addition, a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation.  See Scholtisek v. Eldre Corp., 229 F.R.D. 381, 386 (W.D.N.Y. 2005).

Certification of a collective action class is analyzed in two steps.  The first step, called conditional certification, is generally completed prior to the commencement of any significant discovery.  Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).  At this stage, the plaintiff must only make "a modest factual showing sufficient to demonstrate that

they and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). The standard applied at this stage is "fairly lenient." Iglesias-Mendoza, 239 F.R.D. at 367 (internal quotations and citations omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." Hallissey v. America Online, Inc., No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Once a court conditionally certifies a collective action, it may then facilitate notice to all of the putative class members by approving a notice form. Lynch, 491 F. Supp. 2d at 367 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173, 110 S. Ct. 482 (1989)).

The second step in a collective action certification generally arises only after discovery is completed, and only if it appears that some or all members of a conditionally certified class are not similarly situated. In that case, a defendant may move to challenge certification, at which point a court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated. Lynch, 491 F. Supp. 2d at 367.

**B. Scope of the Notice**

Here, the Plaintiffs are moving only for pre-discovery conditional certification of the collective action class. As such, the Court need only apply the lenient standard requiring that the Plaintiffs make a "modest showing" that the putative class members are similarly situated.

As the Second Circuit recently noted in Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010), "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist". Id. at 555 (internal citations

omitted).  Accordingly, in deciding whether to grant the Plaintiffs' motion, the Court must merely find "'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice."  Hoffmann v. Sbarro Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)) (quoting Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)); see Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375–76 (N.D.N.Y. 1995) ("[P]laintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist").

    The Plaintiffs' proposed notice is addressed to "[a]ll current and former in-store hourly employees, assistant store managers, store managers, delivery drivers, and persons in similar positions employed by Prime Time Specials Inc., d/b/a Centereach Domino's and Christopher Hanley. . . , who worked for Domino's at any time on or after September 19, 2008 to [the date of this order]."  (Pelton Decl., Ex. F.)

    As an initial matter, the Court agrees with the Defendants that the Plaintiffs cannot meet their burden with respect to conditionally certifying a class that includes "store managers".  None of the Plaintiffs allege that they were store managers; are familiar with the responsibilities of store managers; or that they have knowledge of how the Defendants compensated store managers.  In addition, in support of the contention that assistant store managers were improperly classified as exempt from the FLSA overtime requirements, plaintiff Guzelgurgenli states in his declaration that, "Insofar as there was a need for managerial work, such work was performed by the Store Manager".  (Guzelgurgenli Decl., ¶ 9.)  Accordingly, the Plaintiffs have failed to meet even the modest showing that they are similarly situated to store managers.

    However, as set forth below, the Court finds that the Plaintiffs have met their burden with respect to conditionally certifying a class of in-store hourly employees, assistant store managers,

and delivery drivers.  At the conditional certification stage, the Plaintiffs "can satisfy their burden 'by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  Laroque v. Domino's Pizza LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (quoting Hoffmann, 982 F. Supp. at 261).  Here, the Plaintiffs allege the existence of a common policy to deny employees proper compensation for their overtime hours.  As this Court has previously noted, "A policy that requires employees to work overtime without compensation certainly qualifies as a common policy or plan under the FLSA. Numerous courts in this Circuit have granted conditional certification on precisely those grounds."  Alvarez v. IBM Restaurants, Inc., 839 F. Supp. 2d 580, 586–87 (E.D.N.Y. 2012) (Spatt, J.) (collecting cases).

In addition to the allegations in the complaint, each of the named Plaintiffs submitted a signed declaration in which they allege that the Defendants paid them for hours worked over forty per week at their straight time wage, rather than at a rate of time and half as required by the FLSA, and that this was the common policy and practice at all of the locations that the Defendants owned and operated.

Guzelgurgenli worked as an assistant manager at the Centereach store from July 1, 2008 through July 29, 2011.  He asserts that as an assistant manager, he "worked under a store manager" and "had the same responsibilities as [his] non-manager colleagues", including "taking telephone orders, making pizza, putting together pizza boxes, and cleaning the store".  (Guzelgurgenli Decl., ¶¶ 2, 3.)  Guzelgurgenli contends that, from July 1, 2008 through April 11, 2011, he worked approximately 60–65 hours per week.  (Id., ¶4.)  During the first year of his employment as an assistant manager, Guzelgurgenli alleges that he was paid an hourly wage by check for the first forty hours per week that he worked, and that for all hours worked over forty

per week he was paid overtime compensation in cash at his straight-time wage.  (Id., ¶¶ 6,7.)

Subsequently, Gurzelgurgenli alleges that the Defendants converted him from an hourly

employee to a salaried employee.  Although his method of compensation changed,

Gurzelgurgenli contends that the amount of compensation remained the same because his salary

was consistent with the amount of money he was being paid each week as an hourly employee at

the straight time wage.  In addition, his job responsibilities allegedly remained the same, and he

was still required to clock in and clock out each day.  (Id., ¶¶ 8–10.)

H. Kasikci has held multiple positions with the Defendants, and remains currently

employed at the Centereach store as a delivery driver.  Although not alleged in the complaint, in

his declaration, H. Kasikci states that he worked as a delivery driver at the Smithtown store from

May of 2007 through approximately September of 2008, and that he was compensated for hours

worked over forty per week at his regulate rate in the form of a "bonus" in his check.  H. Kasikci

further alleges in his declaration that between September of 2008 and September of 2011, he

worked in a dual capacity at the Centereach store as a delivery driver and an in-store employee.

As a delivery driver, H. Kasikci was primarily responsible for delivering pizza to

customers who placed orders over the telephone.  In his capacity as an in-store employee,

H. Kasikci alleges that his responsibilities consisted of "taking telephone orders, making pizza,

putting together pizza boxes, and cleaning the store".  (H. Kasikci Decl., ¶ 3.)  H. Kasikci

contends that he worked approximately 65–75 hours per week, in which 70% of the time he

worked as a delivery driver, and 30% of the time he worked as an in-store employee.  (Id., ¶¶ 4–

5.)  According to H. Kasikci, the Defendants compensated him for his work as a delivery driver

by paying him a straight wage for the first forty hours of work per week, and then included a

"bonus" in each check, which amounted to overtime compensation at his straight wage.  (Id., ¶

8

7.) Furthermore, when he worked as an in-store employee in the same week he worked as a delivery driver, H. Kasikci alleges that the Defendants would "add approximately two driver hours to [his] paycheck for every in-store hour [he] worked". (Id., ¶ 8.)

B. Kasikci declares that he worked as a delivery driver from approximately July of 2010 through October of 2010, and for approximately two weeks in February of 2011. According to B. Kasikci, he spent the first two months of his employment working at the Centereach, Stony Brook, and Patchouge locations, and the remainder of his employment working only at the Centereach location. (B. Kasikci Decl., ¶ 1.) B. Kasikci alleges that he worked 90–100 hours per week, and that he was compensated at the same straight time wage for all of the hours he worked, with the first forty hours per week being his stated compensation, and the hours over forty reflected as a "bonus" on his paycheck, that "was exactly equal to [his] straight time rate multiplied by the number of hours [he] worked beyond 40 per week". (Id., ¶ 5.)

All three Plaintiffs assert personal knowledge that a delivery driver named Justin complained to the Department of Labor in April of 2011 that the Defendants were not paying him overtime. As a result, the Plaintiffs assert that Justin received compensation for his past overtime worked from Hanley, and that, subsequently, the Defendants began properly paying overtime wages to hourly employees. H. Kasikci also declares that he has personal knowledge of two delivery drivers from the Centereach store, Nick "Doe" and Nuri "Doe", who asked for and received back wages for overtime compensation. (H. Kasikci Decl., ¶ 18.)

Furthermore, all three Plaintiffs allege that the manager at the Centereach store, Deniz Ekinci, "regularly updated" them on the Defendants' payment practices based on information from conversations with "[t]he store managers at all eight of Defendants' store[s] who were allegedly "well-acquainted and share information regarding the consistency of

9

Defendants' illegal methods of paying employees at all eight store[s]". (Guzelgurgenli Decl., ¶ 14; H. Kasikci Decl., ¶ 13; B. Kasikci Decl., ¶10.)

With respect to assistant store managers, Guzelgurgenli alleges that, based on his conversations with Ekinci: (1) "[he] is aware that during the Class Period and Collective Action Period . . . Defendants' other assistant managers and hourly employees, who performed the same or similar work as [him], were required to work more than 40 hours per week and were not paid at time and one-half their straight time rate for all hours worked beyond 40 per week"; (2) "[he] is aware that between August 2009 and [his] termination on July 29, 2011, Defendants' other assistant managers and all in-store hourly employees within Defendants' eight stores began receiving a "salary"; and (3) like Guzelgurgenli, all assistant store managers "were responsible for taking telephone orders, making pizza, putting together pizza boxes, and cleaning the store. No such individuals had the power to hire or fire other employees. . . .". (Guzelgurgenli Decl., ¶¶ 15, 17.) As to the delivery drivers, the Plaintiffs allege that Ekinci informed them that delivery drivers "were required to work more than 40 hours per week and were not paid at time and one-half their straight time rate for all hours worked beyond 40 per week". (H. Kasikci Decl., ¶ 14; B. Kasikci Decl., ¶ 11.)

In opposition to the instant motion, the Defendants submitted the affidavit of Christopher Hanley. In his affidavit, Hanley only denies that he owns the Smithtown store and the Miller Place store. The Court agrees with the Defendants that, at this juncture, employees of the Smithtown and Miller Place stores are not properly included in the class. Although H. Kasikci declares in his affidavit that he was employed at the Smithtown store from May of 2007 through September of 2008, this is inconsistent with his allegations in the complaint, where he alleges that he began working for the Defendants on September 9, 2008. (Compl., ¶ 30.) The Plaintiffs

have not presented any evidence that the Smithtown or Miller Place locations were owned or operated by the Defendants during the relevant period.  Thus, for the purposes of this motion, the Court only considers the additional stores located in Holbrook, Coram, Sayville, Patchogue, and Stony Brook—which the Defendants do not dispute that they own and operate—and hereinafter refers to them as the "Additional Stores".

According to Hanley, each store operates with its own managers, employees and payroll records, and receives separate treatment by "Domino's corporate".  (Hanley Aff., ¶¶ 8–9.) Hanley's affidavit is silent with respect to whether the Defendants paid hourly employees at any of the stores overtime at the rate required by the FLSA.  However, Hanley disputes that Ekinci would have knowledge of the payroll practices at any store other than the Centereach store, and contends that Hanley "did not have written universal policies regarding payroll" because he is "a small one person business".  (Hanley Aff., ¶ 13.)  Finally, Hanley insists that Guzelgurgenli and other assistant store managers perform managerial duties, and disputes that any individuals have approached him to receive overtime wages owed, or that he has paid any individuals back overtime wages.

The Defendants argue that the Court should deny the Plaintiffs' motion because the Plaintiffs' declarations do not specifically name any other employees who were subjected to a similar policy and therefore fail to provide "actual evidence of similarly situated individuals". (Defs.' Br. at 5.)  With respect to the Centereach store, the Court notes that the Plaintiffs do specifically name other employees who they claim were subject to a similar policy.  Specifically, the Plaintiffs identify three other delivery drivers who worked at the Centereach store, "Justin", "Nick" and "Nuri", who they assert complained that the Defendants did not properly compensate them for working overtime.  Although the Defendants are correct that these individuals cannot be

11

members of the putative class because they allegedly received back payments after complaining, these allegations still constitute evidence that other individuals were similarly subject to a common illegal policy during the relevant class period regarding overtime payments. Cf. Lujan v. Cabana Mgmt., Inc., No. 10-CV-755, 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011) (noting that, although affidavits from employees whose claims would be time-barred "may carry less weight than those of recent employees . . . they [nevertheless] are probative of employers' wage and hour practices and they may corroborate the claims of more recent violations"). The fact that the Defendants contend that the allegations regarding Nick and Nuri are "wholly untrue" is irrelevant for purposes of this motion, where the Court will not resolve factual disputes. See Summa v. Hofstra Univ., No. 07-CV-3307, 2008 WL 3852160, at *2 (E.D.N.Y. Aug. 14, 2008) ("At the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.").

Furthermore, although the Plaintiffs do not identify by name similarly situated putative class members at the Additional Stores, the Plaintiffs provide more than "limited anecdotal hearsay to suggest that there is a widespread practice". Barfield v. New York City Health & Hosps. Corp., No. 05-CV-6319, 2005 WL 3098730,at *1 (S.D.N.Y. Nov. 18, 2005). Specifically, the Plaintiffs allege that their manager at the Centereach store, Ekinci, told them that the Defendants: (1) failed to compensate delivery drivers and in-store hourly employees at the Additional Stores at time and one-half their straight time rate for all hours worked beyond forty per week and (2) that assistant store managers at all the Additional Stores performed non-managerial duties, but received a "salary" that did not compensate them for hours worked over forty hours per week at the time and a half rate.

The Defendants attack the credibility of this evidence as hearsay, arguing that Ekinci was not authorized to speak on behalf of the Defendants, and that Ekinci could not have known about the payroll policies at the Additional Stores because he only worked at the Centereach store. As an initial matter, "courts in this Circuit regularly rely on [hearsay] evidence to determine the propriety of sending a collective action notice." Moore v. Eagle Sanitation, 276 F.R.D. 54, 59 (E.D.N.Y. 2011) (internal quotation marks and citation omitted); Lujan, 2011 WL 317984, at *4 n. 9, *6 (noting that "courts frequently consider hearsay in deciding whether to issue class notice" and that striking hearsay statements is "an approach not taken in this district given the 'modest factual showing' required at the notice stage") (citation omitted). Moreover, Ekinci's alleged lack of authorization to make these statements goes to the issue of whether the statements are hearsay or party admissions. See Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 403 n.4 (S.D.N.Y. 2012) (noting that "some of the statements that the defendant objects to as hearsay, namely statements attributed to managers employed by the defendant, are not hearsay.") (citing Fed. R. Evid. 801(d)(2)(D)).

Furthermore, the Plaintiffs do not allege that Ekinci's knowledge of the Defendants' practices at other stores was based on firsthand experience, but rather that he learned of the Defendants' alleged practices through conversations with the managers at those stores. Thus, other than the fact that these statements may constitute hearsay, the Defendants do not submit any evidence to refute the Plaintiffs' allegation that the store managers at the Additional Stores told Ekinci that the Defendants had a common illegal practice of failing to pay employees proper overtime compensation.

More importantly, courts in this Circuit typically do not assess the credibility of a particular statement at this preliminary stage. See, e.g., Capsolas v. Pasta Res., Inc., No. 10-CV-

5595, 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (rejecting the defendants' argument that evidence that a manager denied making a statement regarding a common illegal policy at all of the defendants' restaurants negates the inference of a common policy because, at the preliminary certification stage, the court "does not weigh the evidence or speculate concerning plaintiffs' ultimate ability to succeed on the merits."); Summa, 2008 WL 3852160, at *2.

In fact, courts routinely grant conditional certification for employees of all locations owned by a defendant based on similar statements allegedly made by a manager or supervisor regarding a common unlawful policy or practice, without any further inquiry into its credibility. LeGrand v. Educ. Mgmt. Corp., No. 03-CV-9798, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) ("Three of the plaintiffs—Legrand, LaFrance and Postler—have submitted declarations in which each states that each 'was told by management that [assistant directors of admission] at defendants' schools across the country also had to work over forty hours per week, and were denied overtime.' This is sufficient evidence to satisfy plaintiffs' burden at this early stage."); Harrington v. Educ. Mgmt. Corp., No. 02-CV-787, 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002) (holding that the plaintiff satisfied his "modest preliminary burden" to obtain conditional certification of a class of employees employed by the defendants at a nationwide group of over twenty schools by stating in an affidavit that, "in response to his complaints to management that he was regularly denied overtime pay, his supervisors informed him that it was the defendants' policy not to pay assistant directors overtime compensation because the position was classified as exempt") (citation omitted); cf. Foster v. Food Emporium, No. 99-CV-3860, 2000 WL 1737858, at *2 (S.D.N.Y. April 26, 2000) (plaintiffs similarly situated where they alleged that they worked at stores owned by defendants, that they "are (or were) hourly employees," and identified "certain practices" that were "common" to all of defendants' stores that were illegal);

14

Iglesias–Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("Plaintiffs have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class.").

Nevertheless, the Plaintiffs do not solely rely on Ekinci's statements to support their position that the Defendants had a common illegal practice at the Additional Stores. To corroborate Ekinci's statements, the Plaintiffs provide the declaration of B. Kasikci, who claims he was employed as a delivery driver at three of the Defendants' six locations, and that he reported to a different store manager at each location. Regardless of which location he was working at, B. Kasikci alleges that he was paid overtime at the regular rate, rather than at the required rate of time and one-half, which was reflected in his check as a "bonus". The Defendants do not acknowledge or address this non-hearsay evidence of a common illegal practice, or its' implications with regard to the Plaintiffs' motion.

Based on the undisputed allegations that the Defendants commonly owned and controlled six of the Domino's locations; the fact that the Plaintiffs have provided firsthand evidence of a common policy and practice of denying proper overtime compensation at three of the Defendants' six stores; and Ekinci's statements, admissible for purposes of this motion, that all stores owned by the Defendants had a common illegal policy to deny non-exempt employees overtime at the proper rate, the Court finds that the Plaintiffs' have provided "a sufficient basis from which to infer the same pattern of behavior as to [all of the Defendants' entities]". Karic v. Major Auto. Co., 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (granting conditional class certification of a class of sales representative at nine of the defendants new and used car

dealerships where, despite the fact that the plaintiffs had not submitted evidence of illegal practices at three of the nine stores, the court held that the plaintiffs met the lenient standard for certification of the entire class because they: (1) alleged common ownership and control; and (2) submitted declarations from eight individuals describing the same alleged illegal policy and practice at six of the nine stores); Garcia v. Pancho Villa's of Huntington Vill., Inc., 678 F. Supp. 2d 89, 93–94 (E.D.N.Y. 2010) (finding that plaintiffs, who were all employed at one restaurant, were similarly situated to employees at two other restaurants where all three locations were owned by the same individuals, employees were shared between the three locations, and plaintiffs knew a co-worker in one of the other locations who was not properly compensated for overtime hours).

Thus, in light of the relatively modest showing required on a motion for conditional class certification, the Court finds that the Plaintiffs have met their burden of demonstrating that hourly employees, including delivery drivers and in-store employees, as well as assistant store managers at all of the Defendants' locations, are sufficiently similarly situated to warrant conditional certification.

The Defendants make a number of additional arguments in opposition, none of which are availing. First, the Defendants argue that the Court should disregard the Plaintiffs' declarations altogether because they are unnotarized and "boilerplate". (Defs.' Br. at 10, 11.) However, the fact that a declaration is unnotarized does not preclude the Court from considering the factual statements within, where, as here, the declarations are signed "under penalty of perjury". See 28 U.S.C. § 1746(2) (stating that, with certain exceptions not applicable here, an unsworn declaration may still have the same effect of its intended purpose as a sworn declaration when the document, "executed within the United States," is signed by the declarant and states "I

declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."); see also Hameed v. Pundt, 964 F. Supp. 836, 840–41 (S.D.N.Y. 1997) (rejecting an argument that declarations of two defendants were invalid because they were unnotarized on the ground that, "[p]ursuant to 28 U.S.C. § 1746, any declaration that is required to be sworn or certified under Fed. R. Civ. P. 56(e) is admissible in support of a summary judgment motion if made 'under penalty of perjury.'").

The Court also rejects the Defendants' contention that it should not consider the Plaintiffs' declarations because they are "boilerplate". Although there are some overlapping statements, each named Plaintiff discusses different facts regarding the terms of his employment, including: the dates he was employed; the number of hours per week he worked; his job responsibilities; and his hourly wage. There are other noticeable differences. For example, only B. Kasikci identifies by name Nick and Nuri, the other delivery drivers at the Centereach store who the Defendants allegedly failed to properly compensate for overtime. Moreover, the fact that the Plaintiffs include similar statements regarding the Defendants' alleged failure to properly compensate them for overtime hours is not surprising in light of the fact that they are alleging the existence of a common illegal practice. Similarly, to the extent the named Plaintiffs all assert that they had conversations with Ekinci, the Court would expect them to include similar information about those conversations.

The Defendants also attempt to argue that certification is unwarranted because individual defenses exist with respect to the Plaintiffs' New York law claims for spread of hours pay and violations of the New York tip credit statute, as well as their claim that the Defendants violated the FLSA by classifying assistant store managers as exempt from overtime requirements. However, the existence of individual defenses to each of the Plaintiffs' claims does not preclude

the granting of conditional certification. See Sexton v. Franklin First Fin., Ltd., No. 08-CV-4950, 2009 WL 1706535, at *8–9 (E.D.N.Y. Jun. 16, 2009); see also Searson v. Concord Mortgage Corp., No. 07-CV-3909, 2009 WL 3063316, at *5–6 (E.D.N.Y. Sept. 24, 2009) ("When conducting an initial determination for class certification, the court does not look to [Defendant's] individual defenses because that inquiry is properly addressed in the second stage of certification."); Summa, 2008 WL 3852160, at *5 ("[W]hether the plaintiff or any putative plaintiffs are exempt or otherwise excluded from the FLSA is not a proper inquiry for the court [at the collective action certification stage]. Such factual determinations [should] be addressed at the second stage of the certification process after the completion of discovery."). The Court retains the discretion to decertify the class during the second stage of the certification process if the Defendants' defenses and contrary evidence so warrant. Lujan, 2011 WL 317984 at *7.

Furthermore, the cases cited by the Defendants in support of their position do not compel a different result. First, the Defendants cite to Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) for the proposition that the Plaintiffs cannot satisfy their burden of showing a common policy or plan by citing hearsay evidence from a manager. Although factually similar, the Court finds that Laroque is distinguishable.

Laroque also involved a motion by employees of a Domino's franchise who worked at the defendants' Coney Island location, to conditionally certify a class of employees at all Domino's locations owned by the defendants, including five Brooklyn locations where the named plaintiffs did not work, for alleged violations of FLSA. All of the named plaintiffs submitted declarations regarding alleged illegal practices at their store in Coney Island. In addition, the plaintiffs submitted an affidavit by a named plaintiff stating that two managers, "Sharza" and "Joseph", told him that the defendants engaged in the same practices at their other

18

locations in Brooklyn and that an employee at one of the Brooklyn locations identified as "St. Cyr" had told him that her hours had been illegally reduced. The plaintiffs also provided an affidavit by an individual, "Zama", who included "generalized allegations of wrongdoing" at all Domino's locations he had ever worked at, including one of the defendants' locations in Brooklyn. In opposition, the defendants submitted an affidavit by Sharza denying that he had made any statements regarding the Brooklyn stores, and records that showed that an employee with the name St. Cyr had never been employed by the defendants.

The court granted the motion to certify the class with respect to the employees who worked at the Coney Island location, but denied the motion as to employees at the defendants' Brooklyn stores, holding:

> [P]laintiffs' factual support regarding the situation of the employees of the Brooklyn Area Stores is reduced to a hearsay statement that has been rebutted by the declarant (Sharza), a hearsay statement by an individual whose identity remains unknown ("Joseph"), a hearsay statement, the reliability of which has been seriously drawn into question (St. Cyr), and a an individual's statement that at sometime between 1995 and 2003, he worked at one of the Brooklyn Area Stores, was required to work off-the-clock at that location, and suspects that his time records were reduced while he worked there (Zama). Although plaintiffs' burden at this stage of the proceedings is modest, the court cannot justify certifying a class of plaintiffs, likely numbering in the hundreds, on the basis of such thin factual support.

Id. at 355–56.

The plaintiffs in Laroque and the Plaintiffs here provided as evidence in support of their conditional certification motions hearsay statements by a manager regarding a common illegal policy at other Domino's locations owned by the respective defendants. However, that is where the similarity ends. As previously stated, assuming the Court could consider the credibility of Ekinci's statements, in the instant case, the Defendants have not submitted any evidence directly refuting the credibility of Ekinci's statements. By contrast, in Laroque, the defendants provided

an affidavit from the manager denying his statements, as well as payroll records "seriously draw[ing] into question" another hearsay statements the plaintiffs relied on.  Id.

Moreover, unlike the employee in Laroque who submitted an affidavit of "generalized allegations of wrongdoing" to corroborate the managers' statements, the Plaintiffs in this case provide the declaration of B. Kasikci.  In his declaration, B. Kasikci specifically states, based on firsthand experience, that three of the Defendants' six stores had the same alleged illegal practice of paying him overtime at the regular rate, reflected as a "bonus" in his checks.  Thus, the Plaintiffs in this case have submitted more evidence than the plaintiffs in Laroque that they and putative class members at the Additional Stores were "victims of a common policy or plan".

The Defendants also cite to Guillen v. Marshalls of MA, Inc., 842 F. Supp. 2d 797 (S.D.N.Y. 2012) for the proposition that the Plaintiffs cannot meet their burden of showing assistant store managers at the Additional Stores were similarly situated because they failed to identify another assistant store manager who allegedly performed the same non-managerial duties as Guzelgurgenli.  In Guillen, the court denied a second motion to certify a nationwide class of assistant store managers at Marshalls, holding that evidence that Marshalls had a nationwide policy of classifying the position as exempt, and testimony of employees from nine stores in the New York City area out of 820 stores nationwide that they "routinely performed non-exempt duties", did not "plausibly lead to the inference that ASMs nationwide are performing non-exempt tasks."  842 F. Supp. 2d at 800; see also Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 477 (S.D.N.Y. 2010) (denying the first motion for conditional certification, stating that "[i]t is undisputed that the Marshalls stores are overseen by multiple '[d]istrict' and '[r]egional [m]anagers', and therefore "the fact that ASMs were responsible for performing non-exempt tasks in contravention of their written job requirements in nine stores in

a particular metropolitan area, out of 820 stores nationwide, provides little basis to believe that Guillen is similarly situated to ASMs throughout the country with respect to his claim regarding ASM job responsibilities.").

Here, the Defendants admit that Guzelgurgenli, as an assistant store manager, is a salaried employee. Guzelgurgenli submitted a declaration stating that, at the Centereach store, he performed the same non-managerial duties as an hourly employee as he does as a salaried assistant store manager. H. Kasikci also declares that, as an in-store hourly employee at the Centereach store, he performs the same non-managerial duties as Guzelgurgenli. Furthermore, Guzelgurgenli declares that Ekinci told him, based on his conversations with other store managers, that assistant store managers at the Additional Stores performed the same non-managerial tasks as Guzelgurgenli, and similarly were denied proper overtime compensation.

Although the Plaintiffs do not identify a specific similarly situated assistant store manager, as previously stated, courts have held that similar evidence of a common unlawful policy based on a manager's statement is sufficient to satisfy the Plaintiffs' low burden with regard to assistant store managers. Thus, this case is distinguishable from Guillen, as well as another case cited by the Defendants, Morales v. Plantworks, Inc., No. 05-CV-2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006), where the court denied a motion by plaintiffs to certify a class of Plantworks employees where the evidence submitted by the plaintiffs "contain[ed] no reference to any Plantworks employees other than plaintiffs" and the plaintiffs "*ma[de] no allegations of a common policy or plan to deny plaintiffs overtime*". 2006 WL 288154, at *2 (emphasis added); see also Rosario v. Valentine Avenue Discount Store, Co., Inc., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) ("Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs

have demonstrated that they all were subject to the same allegedly unlawful policy or plan.")

(collecting cases); <u>Cano v. Four M Food Corp.</u>, No. 08-CV-3005, 2009 WL 5710143, at *7

(E.D.N.Y. Feb. 3, 2009) ("As long as they were all similarly situated with *respect to being*

*subject to the same policy* of being denied overtime compensation, and there exists a factual

nexus among the plaintiffs, conditional certification of the collective action is appropriate.")

(emphasis in original).

      Finally, the Defendants state that, because Hanley "is essentially a 'one man' operation"

who "has no Insurance to indemnify his stores for any of the[] potential claims", it would be

"extremely unfair" to require the Defendants to engage in "costly and time consuming"

discovery "based on such a flimsy un-notarized showing". (Defs.' Br. at 9.) Although the Court

finds that the Plaintiffs' have met the requisite low standard, the Court agrees that their

evidentiary showing is less substantial than what is provided in many cases. Nevertheless, courts

have noted that a "[p]laintiff's burden is minimal because the determination that the parties are

similarly situated is merely a preliminary one." <u>Lee v. ABC Carpet & Home</u>, 236 F.R.D. 193,

197 (S.D.N.Y. 2006).

      The Court must balance the potential cost to the Defendants with the goal of conditional

class certification to "preserve and effectuate the rights of potential plaintiffs whose claims might

otherwise become time-barred during the discovery phase of the case." <u>Patton v. Thomson</u>

<u>Corp.</u>, 364 F. Supp. 2d 263, 268 (E.D.N.Y.2005). Courts have held that the sending of notice

"does not prejudice the defendants precisely because it is preliminary" and "may be revisited if it

later appears, after appropriate discovery, that the additional plaintiffs who opt to join the

lawsuit, if any, are not similarly situated." <u>Id.</u>; <u>Sobczak v. AWL Indus., Inc.</u>, 540 F. Supp. 2d

354, 362–63 (E.D.N.Y. 2007).

Bearing in mind the broad remedial nature of the FLSA as well as concerns of fairness and judicial economy, the Court finds that the Plaintiffs are similarly situated to the putative class of current and former in-store hourly employees, assistant store managers, and delivery drivers at the Centereach store and the Additional Stores, and therefore grants the instant motion to conditionally certify a collective class of those employees.

## C.  Notice to the Putative Class

The Plaintiffs have submitted with their motion a proposed notice form to be sent to the potential class members and a "Reminder" form to be sent at an unspecified time before the conclusion of the opt-in period.  The Defendants object to the content of the proposed notice, as well as the reminder notice.

"Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time."  Hoffman–La Roche Inc. v. Sperling, 493 U.S. 165, 171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).  "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner."  Id. at 172, 110 S. Ct. 482.  "The Court understands its discretion to be guided by the goals of the notice:  to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants."  Enriquez v. Cherry Hill Market Corp., No. 10-CV-5616, 2012 WL 440691, at *2 (E.D.N.Y. Feb. 10, 2012).

**1. Content of the Notice**

The Plaintiffs' proposed notice is addressed to "[a]ll current and former in-store hourly employees, assistant store managers, store managers, delivery drivers, and persons in similar positions employed by Prime Time Specials Inc., d/b/a Centereach Domino's and Christopher Hanley. . . , who worked for Domino's at any time on or after September 19, 2008 to [the date of this order]."  In addition, the proposed Notice informs potential class members that they have 90-days to opt-in to the lawsuit.

As previously stated, the Plaintiffs have not satisfied their burden of showing that they are similarly situated to "store managers", and therefore the notice should strike any reference to store managers.  Furthermore, to the extent the Plaintiffs seek to include "all other persons in similar positions", the Court agrees with the Defendants this language is too vague.  The Plaintiffs have submitted evidence with regard to assistant store managers, in-store hourly employees, and delivery drivers, but "have not identified what other job category or individuals would be in similar positions".   Ack v. Manhattan Beer Distribs., Inc., No. 11-CV-5582, 2012 WL 1710985, at *2 n.6 (E.D.N.Y. May 15, 2012).  To that extent, the Court also finds that a generic reference to "in-store hourly employees" without any further explanation is also not helpful.  Thus, the Court directs the Plaintiffs to modify the description of the putative class to state that it is directed to: "All current and former delivery drivers, as well as assistant store managers and in-store hourly employees who performed the following jobs:  taking telephone orders, making pizza, putting together pizza boxes, and cleaning the store . . .".

Moreover, the Court notes that the section of the proposed notice titled "Composition of the Collective Action Class" appears to have been copied from an unrelated litigation.  This

section should be modified to reflect the putative class and requisite time periods covered by this litigation.

With respect to the proposed class period, the Defendants argue that the appropriate length of the notice period is two years because there is no indication that their actions were willful.  The FLSA has a statute of limitations of three years for willful violations and two years for non-willful violations. The Plaintiffs have alleged willfulness in their complaint (Compl., ¶ 49), and the Defendants deny these allegations.  Courts in this circuit have generally held that where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage.  McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 396, 399 (E.D.N.Y. 2011) (citing Iglesias–Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007)).  Thus, the Court agrees with the Plaintiffs that the notice period should be three years.

The Plaintiffs propose that this date be set three years prior to the filing of the complaint, rather than the general practice of setting of three years prior to the Court's approval of the notice.  In light of potential issues with equitable tolling, the Court agrees that, in an abundance of caution, the notice should be sent to all relevant employees who worked for the Defendants on or after September 19, 2008.  See Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (holding that, where "equitable tolling may extend the statute of limitations for certain prospective plaintiffs . . . it is appropriate for notice to be sent to the larger class of prospective members, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date").

Finally, in this regard, the Plaintiffs request that the Court set a ninety day notice period during which potential class members may opt-in, while the Defendants propose a sixty day opt-in period.  Generally, "courts have held that a sixty (60)-day period is sufficient for the return of

Consent Forms", particularly where, as here, the "proposed class is relatively localized and not extremely large". <u>Bowens v. Atlantic Maint. Corp.</u>, 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008). As one court recently noted, "While some courts have granted up to 90 day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." <u>Whitehorn</u>, 767 F. Supp. 2d at 452; <u>see also Fang v. Zhuang</u>, 2010 WL 5261197, at *4 (providing for 90–day period "in light of the frequent, long-term international travel of many of the prospective plaintiffs"). Here, the Plaintiffs have not provided any "special circumstances" to warrant a ninety-day opt-in period. Accordingly, the Plaintiffs are directly to modify the notice to require opt-in plaintiffs to consent to join the action within sixty days of the date of the notice.

### 2. The Reminder Notice

The Defendants object to the Plaintiffs' request to send a "Reminder" notice because "there has been no showing that such a reminder is necessary". (Defs.' Br. at 13.) Neither party cites, and the Court has been unable to find, any caselaw in the Second Circuit directly addressing a reminder notice. Furthermore, there is no general consensus among district courts in other circuits as to the propriety of sending reminder notices. Some courts deny requests to send reminder notices on the grounds that "the reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit". <u>Witteman v. Wisconsin Bell, Inc.</u>, No. 09-CV-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010); <u>Knispel v. Chrysler Group LLC</u>, No. 11-CV-11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012) ("There shall not be any 'reminder notice' provided. Plaintiffs have requested such reminder notices in other cases in this district and those requests have been denied because they are unnecessary and could potentially be interpreted as encouragement by the Court to join the lawsuit."); <u>Robinson</u>

v. Ryla Teleservices, Inc., No. 11-CV-131, 2011 WL 6667338, at *4 n.7 (S.D. Ala. Dec. 21, 2011) (adopting the reasoning in Witteman and denying the plaintiffs' request to send a reminder notice to the putative class); Smallwood v. Illinois Bell Tel. Co., 710 F. Supp. 2d 746, 753–54 (N.D. Ill. 2010) (same).

On the other hand, because the reminder notice is being sent by plaintiff's counsel, and not the court, "courts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in". Sanchez v. Sephora USA, Inc., No. 11-CV-3396, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (citing Harris v. Vector Marketing Corp., 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (approving post-card reminder); Gee v. Suntrust Mortg., Inc., No. 10-CV-1509, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) (approving reminder notice to be sent forty-five days after initial notice sent). Still other courts have taken a middle road, permitting a reminder notice, but requiring that it include language specifically stating that the court neither encourages nor discourages participation in the lawsuit. See Jennings v. Cellco P'ship, No. 12-CV-293, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012) ("Plaintiffs' counsel may also send one reminder letter during this 90–day notice period with the following language added to the proposed letter provided by Plaintiff: "This Notice Serves to Notify You of This Pending Lawsuit. The Court Does Not Encourage or Discourage Participation In This Case.").

Here, the Plaintiffs did not respond to the Defendants' objection to the reminder notice. Based on the Court's review of the prevailing cases, it appears that most plaintiffs do not request permission to send reminder notices, and that there has been no great harm resulting from this practice. The Plaintiffs have not identified any reason why a reminder notice is necessary in this

particular case.  Accordingly, the Court denies the Plaintiffs' request to send a reminder notice, without prejudice to renew their request if they find that the circumstances deem it necessary.

### 3. The Discovery Request

In addition to the Plaintiffs' request that the Court approve the notice and consent forms, they also request that the Defendants be ordered to produce the names, telephone numbers and last known physical addresses of all persons employed by the Defendants within three years prior to the commencement of this action, and that this information be produced both in paper format and digitally.  The Defendants did not object to this request, except to the extent it applied a three year class period.  Consistent with the Court's above ruling, the Court agrees that a three year class period applies.  However, the Court modifies the Plaintiffs' request to include only those individuals who were employed by the Defendants as "delivery drivers", "in-store hourly employees" "assistant store managers" or employees who held positions with the job responsibilities of "taking telephone orders, making pizza, putting together pizza boxes, and cleaning the store".

Furthermore, as previously stated, there is a factual dispute with respect to whether the Defendants own the Smithtown or Miller Place locations.  Although the Defendants deny currently owning either of these locations, they make no representation with respect to whether they had an ownership interest in those locations at any point during the relevant time period. Thus, to the extent the Defendants owned the Smithtown or Miller Place locations during the relevant class period, the employee records must be provided to the Plaintiffs as part of the above-ordered discovery.

### 4. Posting the Notice

The Plaintiffs propose that the notice be issued in two ways. First, the Plaintiffs propose that they mail the notice to all potential plaintiffs within ten days of the Defendants' disclosure of the above information. Second, the Plaintiffs request that the Defendants be ordered to place a notice with consent forms in each of its franchise locations for the benefit of current employees.

The Defendants do not object to either proposed method of notice. Because an issue still remains as to the Defendants' current ownership of the Smithtown and Miller Place stores, the Court cannot direct the Defendants to post a notice on property belonging to a party who is not involved in this suit. Indeed, if the Defendants do not currently own those locations, then there is no benefit to posting the notice in those stores, because those current employees will not be a part of the putative class. Accordingly, the Court grants the Plaintiffs' request to mail the notices, and to post the notices at all locations with the exception of the Smithtown and Miller Place stores.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiffs' motion to conditionally certify a collective action class of delivery drivers, in-store employees, and assistant store managers at the following stores owned by the Defendants:  Holbrook, Coram, Sayville, Patchogue, Stony Brook and Centereach, is granted, and it is further

**ORDERED**, that the Plaintiffs' motion to conditionally certify a collective action class of "store managers" or employees at the Smithtown and Miller Place stores is denied, and it is further,

**ORDERED**, that the Plaintiffs' are directed to submit to the Court within 10 days of the date of this order a proposed notice of pendency reflecting the modifications set forth in this order, and it is further,

**ORDERED**, that the Defendants are directed to produce the names, telephone numbers and last known physical addresses of all members of the putative class as defined in this order who were employed by the Defendants at all locations owned by the Defendants within three years prior to the commencement of this action, and that this information be produced both in paper format and digitally, within 10 days of the date of this order, and it is further

**ORDERED**, that the Plaintiffs' request to mail a reminder notice is denied, and it is further

**ORDERED**, that the Plaintiffs are directed to mail the notice of pendency and consent forms to putative class members within 10 days of the date that the Court approves the notice of pendency. If any notice to any potential plaintiff is returned as undeliverable, the Plaintiffs' counsel is permitted to mail the notice to such potential plaintiff again at any other address he may determine is appropriate. Any such instance of secondary notice by the Plaintiffs' counsel must be sent prior to the end of the opt-in period, and does not extend the opt-in period, and it is further

**ORDERED**, that the Defendants are directed to post the notice and consent forms at its stores located in Holbrook, Coram, Sayville, Patchogue, Stony Brook and Centereach, within 10 days of the date that the Court approves the notice of pendency.

**SO ORDERED.**
Dated: Central Islip, New York
August 8, 2012

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge